IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHELLE MARTINEZ,

       Plaintiff,

      vs.                          No. CIV-11-785  ACT/WDS

GINO R. ROMERO, in his individual
and Official capacities, NORTH CENTRAL
SOLID WASTE AUTHORITY, in its official
capacity,

       Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on the following Motions:

(1)  Defendants' Motion for Summary Judgment [Doc. 173] and Memorandum in Support of Motion for Summary Judgment [Doc. 174]; Plaintiff's Response to Motion for Summary Judgment [Doc. 189]; Reply Brief in Support of Defendants' Motion for Summary Judgment [Doc. 198] and Plaintiff's Notice of Errata on Doc 189 [Doc. 192];

(2)  Defendant Gino Romero's Motion for Summary Judgment based on Qualified Immunity [Doc. 175] and Memorandum Brief in Support of Defendant Romero's Motion for Summary Judgment Based on Qualified Immunity [Doc. 176]; Response to Motion by Summary Judgment by Gino Romero [Doc. 190]; Reply Brief in Support of Defendant Romero's Motion for Summary Judgment Based on Qualified Immunity [Doc. 197]; and Plaintiff's Notice of Errata on Doc. 190 [Doc. 191]; and

(3)  Plaintiff's Motion and Memorandum for Partial Summary Judgment [Doc. 165];

Response Brief Opposing Plaintiff's Motion and Memorandum for Partial Summary Judgment

[Doc. 187]; and Reply to Response to Motion and Memorandum for Partial Summary Judgment

[Doc. 193].

## BACKGROUND

The First Amended Complaint  in this matter was filed on February 13, 2012. [Doc. 65.]

The Second Amended Complaint ("the Complaint"] was filed on July 24, 2012. [Doc. 150.]

The Complaint alleges claims against Gino Romero ("Romero") in his individual and official

capacity and the North Central Solid Waste Authority ("NCSWA.")  Plaintiff makes four claims

in connection with her employment and termination from NCSWA: (1) Mandamus-Inspection of

Public Records; (2)  Breach of Contract; (3) Breach of Contract-Convenant of Good Faith and

Fair Dealing, (4) Violation of Due Process of Law; and (5) Violations of New Mexico Wage and

Hour Act.  [Doc. 150  at ¶¶ 34-56.]

The Complaint alleges that Romero, the manager of NCSWA, terminated her

employment without cause in violation of the NCSWA Personnel Polices and Procedures

("hereafter referred to as "the PPP" ).  She also claims that she was denied any post-termination

hearing to which she was entitled pursuant to due process and the procedures of the NCSWA.

[*Id.*]  Plaintiff also alleges claims for breach of contract based on her employment with NCSWA,

claims under the New Mexico Wage and Hour Act based on not providing written notice of her

accrued sick and annual leave and not paying those amounts to Plaintiff, and mandamus against

Defendants relating to a claim brought under New Mexico's Inspection of Public Records Act

for documents in the possession of NCSWA.  [*Id.* at ¶¶ 25- 36.]

On January 26, 2012, this Court granted summary judgement in favor of Plaintiff against NCSWA on the claim for violations of Inspection of Public Records Act ("IPRA"). [Doc. 59.] By stipulation of the parties, the claim for alleged violations of IPRA as brought against Romero has been dismissed with prejudice. [Doc. 79.] The parties also stipulated to the dismissal, with prejudice, of Plaintiff's claims for breach of contract and the breach of the covenant of good faith and fair dealing against Romero. [*Id.*] On April 4, 2012, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's claim for breach of implied covenant of good faith and fair dealing and Plaintiff's claim for violation of due process to the extent the claim is based on the alleged denial of payment of Plaintiff's accrued vacation and sick leave. [Doc. 103.]

## MOTIONS FOR SUMMARY JUDGMENT BEFORE THE COURT

Defendants' Motion for Summary Judgment [Doc. 174] seeks summary judgment on Plaintiff's claim that Defendants violated her Fourteenth Amendment right to due process when they terminated her employment without affording her due process. Defendants also seek summary judgment on Plaintiff's state law claim that NCSWA breached an employment contract by terminating her without cause and without providing her a hearing and by failing to allow her to inspect and copy her personnel file. [Doc. 174 at p. 1.] Defendant Romero seeks summary judgment based on qualified immunity in connection with Plaintiff's Fourteenth Amendment right to due process in connection with her termination from NCSWA. [Doc. 176.] Plaintiff seeks summary judgment on her constitutional due process claim and on her state law breach of contract claim that she was not paid her accrued vacation and sick leave upon termination. [Doc. 165.]

The Court will address Defendants' Motion for Summary Judgment [Doc. 173] as resolution of this motion will impact the other two pending Motions for Summary Judgment. [Doc. 176 and Doc. 165.]

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 governs summary judgment. Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue of fact is disputed, or genuine, if there is sufficient evidence so that a rational trier of fact could find for the non-movant. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999). "An issue of fact is 'material if, under the substantive law, it is essential to the proper disposition of the claim.'" *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). The burden is on the movant to show there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

If the movant meets this initial burden, burden then shifts to the non-moving party to contradict the facts that the movant put forward. The non-movant must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. The non-moving party cannot rest on allegations or denials, *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir.

4

2004), nor can the non-moving party rely on only conclusory allegations to defeat a properly supported motion for summary judgment. *White v. York Intern. Corp*., 45 F.3d 357, 363 (10th Cir.1995).  The Court must disregard statements of mere belief.  *Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994).

The summary judgment inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,  251-52 (1986). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The Local Civil Rules of the United States District Court for the District of New Mexico mandate a precise structure for the presentation of facts for summary judgment briefing. D.N.M.LR-Civ 56.  The local rules provide that the Motion for Summary Judgment must contain concise numbered statements of all material facts as to which the movant contends no genuine issue exists.  D.N.M.LR-Civ 56.1(b).   The Response must a contain concise statement of the facts stated by the movant to which the non-movant contends a genuine issue does exist.  *Id.*  All material facts in the memorandum in support of summary judgment will be deemed undisputed "unless specifically controverted" in the Response.  *Id.*  Any additional facts which the non-movant contends are material to the resolution of the motion must be lettered.  The Reply must indicate each additional fact set forth by the non-movant which the movant disputes or to which the movant asserts an objection.  Any material facts in the Response which are not controverted will be deemed undisputed.

**UNDISPUTED FACTS**

A.   Background.

As an initial matter, the Court must address the method used by Plaintiff to object to

Defendants' undisputed facts and her method used to present additional facts.  First, Plaintiff

presents a "Background" section in her Response which presents factual assertions without any

record support. [*See* Doc. 189 at pp. 1-3.]  She also includes additional factual assertions in her

responses to Defendants' enumerated material facts [*See* Doc. 189 at pp. 3-7.] This presentation

of facts violates D.N.M.LR-Civ. 56.1(b).  As noted above, each "additional fact must be lettered

and must refer with particularity to those portions of the record upon which the non-movant

relies." [*Id.*]  Plaintiff also attempts to "dispute," some of Defendants' enumerated undisputed

facts by asserting conclusory statements.  For example, many times Plaintiff simply asserts that

one of the Defendants' Undisputed Facts is "irrelevant." [*See discussion of Undisputed Facts*

*below.]* An assertion of relevancy, without more, does not specifically dispute an enumerated

undisputed fact but rather constitutes argument of counsel.   So, not only do many of Plaintiff's

"responses" to Defendants' Undisputed Facts fail to "specifically" controvert them as required

by D.N.M.LR 56.1(b), but they also improperly "dispute" them by raising vague and

unsupported assertions or argument of counsel.  These types of responses to an undisputed fact is

insufficient to create a issue of material fact.  *Alvariza v. Home Depot,*  2007 WL 794416, 3

(D.Colo.2007)(unpublished) *citing Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir.2004)

(stating "unsupported conclusory allegations . . . do not create a genuine issue of fact" on

summary judgment).   "The argument of counsel is not evidence, and therefore does not provide

a proper basis for denying summary judgment." *Fritzche v. Albuquerque Mun. Sch. Dist.*, 194

F.Supp.2d 1194, 1206 (D.N.M. 2002).  Speculation, opinion, or hearsay testimony is "not

suitable grist for the summary judgment mill." *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995) (quotation omitted). In addition, "the court may not rely on the assertions of legal counsel for the existence of factual allegations ." *Dean v. Allstate Ins. Co.*, 878 F.Supp. 1397, 1401 (D.Colo.1993); *E.E.O.C. v. Patterson-UTI Drilling Co., LP, LLLP*  2009 WL 2139840, 1 (D.Colo. 2009)(unpublished).

The Court has granted Plaintiff much leeway and has done the best it can on the record before it. "It is not the job of this court to search the record ... for evidence..." *Clayton v. Vanguard Car Rental U.S.A., Inc*., 761 F.Supp.2d 1210, 1219 -1220 (D.N.M.2010) *citing Adams v. Dyer*, 223 Fed.Appx. 757, 762 (10th Cir. 2007)).  The Court observes that it could possibly grant summary judgment for the Defendants based on violations of the rules governing summary judgment, but it will decide the motion on the merits based on the undisputed facts which are supported by admissible evidence.  For future reference, counsel for Plaintiff is cautioned that the Federal Rules of Civil Procedure, as well as the Local Rules for the District of New Mexico, must be followed.

B.   The Defendants' Undisputed Material Facts ("UMF").[1]

1.  NCSWA was established through a Joint Powers Agreement between Rio Arriba County, the City of Espanola, Santa Clara Pueblo, and Ohkay Owingeh.  NCSWA is a local governmental entity that provides solid waste disposal and recycling services for the residents of Rio Arriba County.  [Doc. 174 at p. 2; Doc. 189 at pp.2-3.]

UMF 1 is undisputed.

---

[1]  The Defendants undisputed facts are numbered, and Plaintiff's undisputed facts are lettered, as presented to the Court in the briefing.

2.  Romero was hired by NCSWA as its Manger effective June 6, 2011.  As the Manager, Romero has the power to carry out the policies and procedures of NCSWA.  He also has the power to hire and terminate employees. [Doc. 174 at p. 2; Doc. 189 at p 3.]

UMF 2 is undisputed.

3.  Plaintiff was hired by NCSWA in October 2004 as its "Administrator."  In July 2008, Plaintiff became the "Assistant Manager/Administrator" and remained in that position until she was appointed "Interim Manger" on November 18, 2009.  When Romero was hired as the Manager for the NCSWA, Plaintiff returned to her position as "Assistant Manager/ Administrator."  Plaintiff was terminated from NCSWA on July 19, 2011.  [*Id.* ]

UMF 3 is undisputed.

4.  At the time of Plaintiff's termination from NCSWA, the Personnel Policies & Procedures ("PPP")  in effect were those approved by the Board of Directors on June 9, 2008. Section 3.2 of the PPP provides:

3.2   <u>Classification of Employees</u>

Employees shall be classified for purpose of tenure of employment with the Authority according to the following definitions:

    A.   Directors and Officers of the Authority serve pursuant to appointment by the North Central Solid Waste Authority and shall include:
(1) Director
(2) Authority Attorney (appointed)
(3) Division Supervisors
(4) Manager

    B.   Classified employees are employees who have completed the probationary period whose employment may only be terminated by the North Central Solid Waste Authority for cause and shall include:
(1) Regular Full Time Employees
(2) Regular Part Time Employees

      C.      Unclassified employees are employees who are employed at the convenience of the North Central Solid Waste Authority and may be terminated without cause, and shall include:
(1) Probationary employees
(2) Temporary or seasonal workers
(3) Emergency employees

[Doc. 174 at p. 3 at UMF 4 and at Ex. E.]

Plaintiff asserts that UMF 4 is "incomplete and misleading" in that Defendants have not produced any job description identifying that the position of "assistant manager" or "administrator" fell under 3.2A(4), above, or that the positions of "assistant manager" or "administrator" were identified under the job description as "Division Supervisors" under 3.2 A(3), above.  She also states that Board never exempted the positions of  "assistant manager" or "administrator" from the grievance process. [Doc. 189 at p. 4.] For support, she cites to the PPP, and the Board Minutes. [*Id.*]

Plaintiff's "additional facts" do not create a material issue of fact as to UMF 4.  UMF 4 remains undisputed.   Plaintiff's assertions that "assistant manager" and "administrator" do not appear on the list of Classification of Employees under 3.2(A) above will be discussed below when the Court addresses her argument regarding the PPP.

5.  The enumerated positions listed in Section 3.2(A) of the PPP; i.e., Director, Authority Attorney, Division Supervisors, and Manager are all considered to be "at-will" employees of the NCSWA. [Doc. 174 at pp. 3-5 and at Ex. D; Doc. 189 at p. 4; Doc. 189 at p. 4.]

UMF 5 is undisputed.

6.  Section 1.2 of the PPP defines what is meant by the term "Division Supervisors" as that term is used in Section 3.2(A)(3) provided above in Undisputed Fact # 4.  Section 1.2 provides:

9

1.2     Chain of Command

The Authority is organized into various divisions according to function.  These Divisions are supervised by the Manager and directed by Division Supervisors. Employees under the Division Supervisors carry out the routine work of the Authority and have direct control of the activities of the employees in their respective divisions.

The Division Supervisors referred to in the Personnel Rules and Regulations are those persons designated on the staffing organizational chart as heading the Field Operations and Office Departments.  The current organizational chart is available to all employees by contacting the Manager.

[Doc. 174 at p. 5 and at Ex. E; Doc. 189 at p. 4.]

UMF 6 is undisputed.

7.   Section 7.8 of the PPP states: "Disciplinary actions taken against regular, classified employees shall be subject to the grievance procedures set forth in Section 5 herein, beginning with 5.5 C.1," which means that employees who are not classified would not be entitled to invoke the grievance procedures in Section 5 of the PPP. [Doc. 174 at pp. 5-6 and at Ex. E; Doc. 189 at p. 4.]

UMF 7 is undisputed.

8.   Plaintiff was interviewed by the then-Manager of the NCSWA, Joe Lewandowski, prior to being offered a position with NCSWA .  Mr. Lewandowski verbally told Plaintiff that she would be considered a "classified" employee at NCSWA.  Plaintiff never received any written documentation from Mr. Lewandowski indicating that her position at NCSWA would be considered "classified." [Doc. 174 at p. 6 and at Ex. D.]

Plaintiff states in response to UMF 8 that the Board never designated the positions of "assistant manager" or "administrator" as being ineligible to participate in the grievance process and cites to her own deposition. [Doc. 189 at p. 5.]  Plaintiff also asserts that "assistant manager"

and "administrator" were not designated as being ineligible to participate in the grievance process.  This will be discussed below when the Court addresses Plaintiff's argument regarding the PPP.  Plaintiff's "additional fact" does not create a material issue of fact as to UMF 8.

UMF 8 remains undisputed.

9.   On September 24, 2004, after she was interviewed by Mr. Lewandowski, Plaintiff completed an Application for Employment that she submitted to NCSWA.  When she signed the Application, Plaintiff certified that she understood: "My employment is not guaranteed for any term, and that my employment may be terminated by the company or myself for any reason."  When she signed the Application, Plaintiff also certified that she understood: "No management official is authorized to make any oral assurance or promise of continued employment."  [Doc. 174 at p. 6 and at Ex. F.]

Plaintiff claims UMF 9 is misleading and irrelevant.   [Doc. 189 at p. 5.]   She states that the application was that of a "private employer to be replaced later." [*Id.*][2]  She supports this assertion that UMF is disputed with (1) deposition testimony that  Romero relied on the PPP when he terminated her [*Id.*], and (2) her own testimony that she saw other applications of individuals "who did not hold any supervisory or managerial position" and maintained their classified status and had completed the same application [*Id.* at Ex. 5].  These facts are immaterial and do not create an issue of fact as to UMF 9.

UMF 9 remains undisputed.

_____

[2]  Plaintiff states in her Response that "this job application was obtained from Ms. Martinez' father's private business and was only intended to be a place holder until a new application was obtained." [Doc. 189 at p. 11; Id. at Ex. 5.] (The court notes there is nothing in the record to indicate that Plaintiff ever filled out a "new application.")  Plaintiff also states in her Response that "the County and City employees wh came to work for NCSWA signed the same job application."  (Doc. 189 at p. 10.)

10.   From 2004 through 2009, while Plaintiff was the "Administrator" and then "Assistant Manager/Administrator" for NCSWA, she was the employee at NCSWA who was responsible for supervising the office staff.  As the supervisor for the office staff, Plaintiff had the authority to control the office employees' activities and to assign them tasks. [Doc. 174 at p. 6.]

Plaintiff responds that UMF 10 is "irrelevant." [Doc. 189 at p. 5.] Plaintiff's response is the argument of counsel, not a properly supported fact.  As noted above in Section III (A), argument of counsel is not suitable grist for the summary judgment mill.

UMF 10 remains undisputed.

11.   On April 13, 2007, Plaintiff submitted a memorandum to Mr. Lewandowski, who was the Manager of the Authority, in which she repeatedly referred to herself as a "supervisor." She wrote: "I have been performing my duties as the Administrator and as a supervisor for the last two years and six months without *any indication* that I do not have the authority or authorization to reprimand, discuss, review or inquire about an employee's job performance, behavior, time or work."   She also indicated that she was in charge of the office at NCSWA when she wrote: "I have made it very clear to all employees that I do not tolerate disrespectful or rude behavior in the Authority Office." [Doc. 174 at p. 7, and at Ex. G.]

Plaintiff disputes UMF 11 as irrelevant. [Doc. 189 at p. 5.] Again, as stated above, argument of counsel does not create an issue of material fact.

UMF 11 remains undisputed.

12.   According to the Organizational Chart dated May 27, 2008, Plaintiff was listed as the "Administrator" under the "Administration" box and Plaintiff agrees she was responsible for supervising the employees listed under the "Administration" box.  Plaintiff further agrees that

the employees listed under "Administration" were those individuals who worked in the office. [*Id.*, and at Ex. H.]

Plaintiff responds by saying that she was not a "Division Supervisor" over the "Office Department" and that the "'Office Department' is a proper noun [and] as such it is a term of art referring to a specific department" with citations to deposition testimony that Romero and Plaintiff capitalize proper names of places, people and things. [Doc. 189 at p.5.]   Plaintiff fails to create a material issue of fact as to UMF 12 with these assertions.

UMF 12 remains undisputed.

13.  In July 2008, Plaintiff was promoted to "Assistant Manager/Administrator."  In that position, she retained the role that she had as "Administrator," and she continued to supervise the office staff.   The Organizational Chart passed by the NCSWA Board of Directors on July 15, 2008, identified Plaintiff as a "Supervisor" and showed her as the person responsible for supervising those employees in Administration; i.e., the employees who worked in the office at NCSWA. [*Id.*, and at Ex. I.]

Plaintiff disputes UMF 13 as irrelevant. [Doc. 189 at p. 5.]   As stated above, argument of counsel does not create an issue of material fact.

UMF 13 remains undisputed.

14.  On November 18, 2009, Plaintiff was appointed as the "Interim Manager" for NCSWA.  On August 18, 2010, the Board of Directors for NCSWA approved an Organizational Chart that identified Plaintiff as "Interim-Manager," and that Organizational Chart shows Plaintiff to be the person responsible for supervising the employees in Administration which are those who worked in the office at NCSWA.  Plaintiff understood that, when a Manager was

hired, she would return to her position as "Assistant Manager/Administrator." [Doc. 174 at p.8, and at Ex. J.]

Plaintiff disputes UMF 14 as irrelevant.  [Doc. 189 at p. 5.]   As stated above, argument of counsel does not create an issue of material fact.

UMF 14 remains undisputed.

15.  On June 6, 2011, Romero commenced his employment as the Manager for NCSWA. Plaintiff returned to her position as the "Assistant Manager/Administrator" of NCSWA.  The Organizational Chart was updated on June 14, 2011, to reflect that Plaintiff was the "Assistant Manager," and it shows Plaintiff to be the person responsible for supervising the employees in Administration; i.e., those who worked in the office at NCSWA. [*Id.,* and at Ex. K.]

Plaintiff states that this fact is incomplete and misleading.  She states that she did not supervise the "Office Department" and Romero relied on the PPP when he terminated Plaintiff. [Doc. 189 at p. 6.]  Plaintiff's objections do not create a disputed issue of fact as to UMF 15.

UMF 15 remains undisputed.

16.  Plaintiff was placed on administrative leave from NCSWA on June 29, 2011.  She remained on paid leave until her employment was terminated on July 19, 2011.  Romero consulted the PPP and determined that Plaintiff was a "nonclassified" or "at-will" employee. Therefore, Plaintiff was not given a reason for her termination. [*Id.*]

Plaintiff states that UMF 16 is "disputed in part" in that Romero did give a reason for her termination; i.e., "based on a review of your work history and job performance." [Doc. 189 at

p. 6; Id. at Ex. 5.]  This disputed fact does not create a material issue of fact as to the date or circumstances of Plaintiff's termination.[3]

UMF 16 remains undisputed.

17.  Defendants' UMF 17 is legal argument of counsel and will not be considered as an undisputed fact.

18.  Defendants' UMF 18 is legal argument of counsel and will not be considered as an undisputed fact.

19.  Plaintiff concedes that, if her position fell within the definition of "Division Supervisor" as set forth in Section 1.2 of the PPP, she would have held a "nonclassifed" or "at-will" position.  Plaintiff further concedes that, first as "administrator" and then as "Assistant Manager/Administrator," she was the supervisor of the office staff throughout the entire tenure of her employment at NCSWA.

Plaintiff states that UMF 19 is misleading and incomplete.  She states her concessions were accurate but the deposition questions ignored "Office Department" and that "the board must affirmatively designate the position as being not able to partake in the grievance process." Plaintiff offers no evidence to support these statements which are really no more than arguments of counsel.  Furthermore, she stated that the related UMF 6, above, is undisputed.

UMF 19 remains undisputed.

---

[3]  Plaintiff does not articulate the significance of this statement in her Response.  Presumably Plaintiff is implying that since she was given a "reason" for her termination, she was in fact treated as a "classified" employee. Plaintiff failed to assert this argument.  But even if Plaintiff had made such an argument, it would not assist her in this case.  "At-will" employees are not entitled to a reason for their termination; however, that does not prevent an employer from providing a reason.  See *Harbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993) ("An at-will employment relationship can be terminated by either party at any time *for any reason* or no reason, without liability.") (Emphasis added.)

20.   Defendants' UMF 20 is legal argument of counsel and will not be considered as an undisputed fact.

C.   Plaintiff's Additional Undisputed Material Facts ("AUMF")

A.   On July 15, 2008, Plaintiff became the assistant manager. [Doc. 189 at p. 7; Doc. 198 at p. 3.]

AUMF "A" is undisputed.

B.   Resolution 2008-015, "2008-2009 Employee Payroll Adjustments," was adopted by the Board of Directors and its attachment lists Plaintiff's "status" as "Perm." [Doc. 189 at p. 7, and at Ex.9.] This portion of  UMF "B" is undisputed. [Doc. 198 at p.3.]

However, Plaintiff further states under AUMF "B" that a "perm" employee "is synonymous with the term 'classified' employee." [Doc. 189 at p. 7.]  This constitutes inadmissible and unsupported argument of counsel.  The term "permanent" is not used in Section 3.2 of the PPP where the classification of employees are designated. [*See* UMF 4, above.] Plaintiff does not show where the term "permanent" is used anywhere in the PPP to classify employees. [*See* Doc. 198 at p. 3 and at Ex. M.] This portion of AUMF "B" will, therefore, not be considered for summary judgment purposes.

C.   Plaintiff asserts that, under Section 5.6 (C) of the PPP, "only those positions specifically designed by the Board of Directors in writing are not afforded grievance procedures [and] [i]ndividuals seeking to challenge disciplinary actions use the grievance process." [Doc. 189 at p. 7 citing Ex. 3.]

AUMF "C" is not supported by Plaintiff's evidence.  Plaintiff cites to Plaintiff's Ex. 3 which is a copy of the grievance procedures which states that "all employees are eligible to file a grievance except [for the following;] (1) Manager, (2) Temporary emergency or seasonal

16

employees, (3) Probationary employees [and] (4) Other positions as may be designated by the Board of Directors in a written job description." [*Id.* at Ex. 3 at Section 5.6]   In addition, Defendants state that "Plaintiff specifically admitted that 'Section 7.8 of the NCSWA Policies and Procedures . . . means that employees who are not classified would not be entitled to invoke the grievance procedures in Section 5 of the Personnel Policies and Procedures.'" [Doc. 198 at p. 3, citing UMF 7.]

AUMF "C" will therefore not be considered for summary judgment purposes.

D.   NCSWA produced no written job description showing that the position of Assistant Manager/Administrator was covered by Section 5.6 of the Grievance Procedures. [Doc. 189 at p.7.]

Defendants agree there is no written job description showing that the Assistant Manager/Administrator was covered by Section 5.6 (C) of the PPP.  [Doc. 198 at pp. 3-4.] However, this fact is immaterial given Plaintiff's admission that "Section 7.8 of the NCSWA Policies and Procedures . . . means that employees who are not classified would not be entitled to invoke the grievance procedures in Section 5 of the Personnel Policies and Procedures." [Doc. 198 at p. 3, citing UMF 7.]

AUMF "D" will therefore be considered an undisputed fact, but it is not material to the resolution of Defendants' Motion for Summary Judgment.  However, Plaintiff's assertions that NCSWA's use of the terms "assistant manager" and "administrator" will be discussed below when the Court addresses her argument regarding the PPP. The Court will also address the Plaintiff's argument regarding the nomenclature used by NCSWA when designating her position at NCSWA.

17

E.   The original PPP became effective on November 12, 2004, and "superceded [sic] the job application forms by their terms and conditions." [Doc. 189 at p. 8.]

Defendants admit the original PPP became effective on November 12, 2004, but state that it is unclear what Plaintiff means by saying that they "superceded the job application forms by their terms and conditions."  [Doc. 198 at p. 4.] Defendants state that if Plaintiff is suggesting that the PPP alone, as opposed to the employment application or any oral statements made by Mr. Lewandowski, control whether Plaintiff was a "classified" employee or not, they disagree with this statement.  [*Id.*]  The Court agrees that Plaintiff's statement is unclear.  To the extent Plaintiff is asserting that the PPP alone control whether Plaintiff was a "classified" employee or not, that statement constitutes argument of counsel and is therefore inadmissible.

It is undisputed that the original PPP became effective on November 12, 2004.

F.  The 2008 edition of the PPP contain identical provisions to the 2004 edition. [Doc. 189 at p. 8; Doc. 198 at p. 4.]

AUMF "F" is undisputed.

G.   Plaintiff's statement in  "G" addresses whether or not Romero should have received the position of Manager of NCSWA Board of Directors. [Doc. 189 at p. 8]   Defendants do not dispute these facts but state that they are immaterial to Plaintiff's claims in this lawsuit; i.e., whether Plaintiff was a "classified" employee or an "at will" employee entitled to due process and use of the grievance procedures. [ Doc. 198 at p. 4.] The Court agrees that these facts are immaterial to Plaintiff's claims.

AUMF "I" is undisputed but immaterial.

H.   Plaintiff states in AUMF "H" that Mr. Trujillo is Mr. Campos's boss.[Doc. 189 at p. 8.]  Defendants do not disputes these facts but state that they are  immaterial to Plaintiff's

claims in this lawsuit. [Doc. 198 at p. 4.] The Court agrees that the facts in AUMF "H" are immaterial to Plaintiff's claims.

AUMF "H" is undisputed but immaterial.

I.  The Board of Directors did not approve Plaintiff's termination as required under the Joint Powers Agreement. [Doc. 180 at p. 9.] Defendants state that they do not dispute that the Board of Directors did not approve the termination of Plaintiff's employment prior to that action being taken by Romero [Doc. 196 at p. 4.] but that it is immaterial to the issues before the Court. The Court agrees that the facts in AUMF "I" are immaterial to Plaintiff's claims.

AUMF "I" is undisputed but immaterial.

## RELEVANT LAW

Plaintiff is pursuing a claim under 42 U.S.C. § 1983 against both NCSWA and Romero for alleged violations of federal due process based on the allegation that her employment was terminated without cause and without a hearing because the PPP, as well as oral representations made by a previous manager that led her to believe supervisor that she would be considered a "classified" employee.  She also pursues a state law breach of contract claim based on the same theory.

A.      Due Process

The due process clause of the Fourteenth Amendment encompasses two forms of protections: "(i) procedural due process, which requires that the state employ fair procedures when depriving a person of a protected property interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons." *Chavez-Rodriguez v. City of Santa Fe,* No. Civ. 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.) *(citing County of Sacramento v. Lewis,* 523 U.S. 833 (1998)).

19

"Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." [Id.]

Plaintiff appears to raise only a procedural due process claim in her lawsuit [*see* Second Amended Complaint, Doc. 150] and does not present a substantive due process argument in her Response [Doc. 189].  In any event, "[u]nder either form of protection . . . a person must have a protected interest in either life, liberty, or property."  *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F.Supp. 2d 1199, 1221-22 (D.N.M. 2011)(citations omitted).

The law governing procedural due process claims involves a two-step inquiry.  First, the Court must determine whether the plaintiff possessed a protected interest such that due process protections are applicable, and, if so, the Court must determine whether the individual was afforded the appropriate level of process.  *See, e.g., Watson v. University of Utah Med.Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).  With respect to the first requirement, a plaintiff's protected property interest must arise out of an independent source, such as state law.   *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).   Property interests "are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Hyde Park Co. V. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000), *quoting Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  In general, federal courts look to state law to determine whether a property interest in employment exists.  *Clinger v. New Mexico Highlands University Board of Regents*, 215 F.3d 1162, 1167 (10th Cir. 2000); *Chavez-Rodriguez v. City of Santa Fe*,  2008 WL 5992271, *7 (D.N.M. Oct. 9, 2008)(Browning, J.).

B.   <u>Employment Contracts in New Mexico</u>

In New Mexico, employment without a written contract and for an indefinite period can be terminated at will by either party with or without cause.  "[A]n employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993);  *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 22, 131 N.M. 607, 41 P.3d 333("[W]e have always required that the *promise* that is claimed to have altered the presumed at-will term be *sufficiently explicit* to give rise to reasonable expectations of termination for good cause only")(emphases in original).  "An at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability." *Hartbarger v. Frank Paxton Co.*, 115 N.M. at 669, 857 P.2d at 780.

An implied contract that alters the presumptive at will employment relationship might be found in an employee handbook or manual.  *Harbarger,* 115 N.M. at 669, 857 P.2d at 780. However, in order to rebut the presumption of an at-will employment relationship, the implied contract of employment must contain terms which are "sufficiently explicit to create a reasonable expectation of an implied contract [of employment]." *Trujillo* , 2002-NMSC-004, ¶ 22; *see also Harbarger*, 115 N.M. at 672, 857 P.2d at 783.  "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the presentation or conduct relied on." *Harbarger*, 115 N.M. at 672, 857 P.2d at 783.

New Mexico appellate courts have suggested that whether an implied contract exists should ordinarily not be decided on summary judgment. *See Kiedrowski*, 119 N.M. at 575, 893 P.2d at 471.  However, more recently the New Mexico Court of Appeals stated that "because an

21

employee's expectation based on an employer's words or conduct must meet a 'certain threshold of objectivity,' an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." *West v. Wash. Tru Solutions,* , 2010-NMCA-001, ¶ 7, 147 N.M. 424, 224 P.3d 651 (citations omitted)(emphasis added.)  Also, courts should not interpret an implied contract of employment based on an handbook or manual that would nullify any other provisions of the handbook.  *Pub. Serv. Co. Of N.M. v. Diamond D. Const. Co.,* 2001-NMCA-82 ¶ 19, 131 N.M. 199 ("We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document. . .").  Further, "[t]o fit the immediate verbal context or the more remote total context particular words or punctuation may be disregarded or supplied; clerical or grammatical errors may be corrected; singular may be treated as plural or plural as singular."  Rest.(Second) of Contracts § 202 cmt. D (1981).

## ANALYSIS

A.  Introduction

The issue presented to the Court is whether or not Plaintiff was a non-classified "at will" employee who could be terminated at any time or whether she was a classified employee who was entitled to file a grievance after the loss of her job.  If Plaintiff was not a classified employee,  she was not entitled to employ the grievance process in the PPP and therefore did not have a property interest in her job protected by the Constitution.

B.  Plaintiff's Application for Employment

Prior to being offered a job at NCSWA, Plaintiff was interviewed by then Manager Joe Lewandowski.  Mr. Lewandowski verbally told Plaintiff that she would be considered a "classified" employee at NCSWA.  Plaintiff never received any written documentation indicating that her position would be considered "classified." [UMF 8.]

On September 24, 2005, Plaintiff signed an application for employment with NCSWA which acknowledged that she understood the following:

> My employment is not guaranteed for any term, and that my employment may be terminated by the company or myself for any reason.
> No management official is authorized to make any oral assurance or promise of continued employment.

[UMF 9.]

Plaintiff argues that the oral statements made by Mr. Lewandowski that she will be considered a "classified" employee are "bolstered" by the PPP which, she argues, is an implied contract of employment designating her position as "classified." The Court will first address the PPP and then will address Plaintiff's acknowledgments in her application of employment and Mr. Lewandowski's oral statements to her.

    C.  <u>The NCSWA Personnel Policies and Procedures</u>.

The PPP in effect at the time that the Plaintiff was terminated from NCSWA by Romero were those approved by the Board of Directors on June 9, 2008. [UMF 4, 5, 6, 7.]  The relevant portions are as follows.

**<u>Section 1.2</u>**:

> The Authority is organized into various divisions according to function.   These Divisions are supervised by the Manager and directed by Division Supervisors. Employees under the Division Supervisors carry out the routine work of the authority and have direct control of the activities of the employees in their respective division.
>
> The Division Supervisors referred to in the Personnel Rules and Regulations are those persons designated on the staffing organizational chart as heading the Field Operations and Office Departments.  The current organizational chart[4] is available to all employees by contacting the Manager.

_____

[4]The organizational charts are discussed below.

23

**Section 3.2**:

    3.2   Classification of Employees

Employees shall be classified for purpose of tenure of employment with the Authority according to the following definitions:

        A.     Directors and Officers of the Authority serve pursuant to appointment by the North Central Solid Waste Authority and shall include:
               (1) Director
               (2) Authority Attorney (appointed)
               (3) Division Supervisors
               (4) Manager

        B.     Classified employees are employees who have completed the probationary period whose employment may only be terminated by the North Central Solid Waste Authority for cause and shall include:
               (1) Regular Full Time Employees
               (2) Regular Part Time Employees

        C.     Unclassified employees are employees who are employed at the convenience of the North Central Solid Waste Authority and may be terminated without cause, and shall include:
               (1) Probationary employees
               (2) Temporary or seasonal workers
               (3) Emergency employees

[UMF 4.]

**Section 5.6 (C)**:

    Grievance Regulations:

    C.  All employees are eligible to file a grievance except:
        (1) Manager;
        (2) Temporary emergency or seasonal employees;
        (3) Probationary employees;
        (4) Other positions as may be designated by the Board of Directors
            in a written job description.

[Doc. 189 at Ex. 3.]

**Section 7.8** :

Disciplinary actions, taken against regular, classified employees shall be subject
to the grievance procedures set forth in Section 5 herein, beginning with 5.5C.1.

[UMF 7.]

    D.   The NCSWA Organizational Charts

There are four organizational charts of the management structure at NCSWA in evidence.

[UMF 12, 13, 14 and 15.]  The first one, dated May 17, 2008 [Doc. 174 at Ex. H], reflects four

divisions illustrated with headings as follows: (1) Administration, managed by "Administrator

Michele Martinez," who oversees two billing clerks, two office clerks and one dispatcher; (2)

Support Services, managed by "Supervisor Steve Madrid;" (3) Commercial, managed by

"Supervisor Armando Garcia;" and (4) Residential, managed by "Supervisor Lloyd Maestas."

The second organizational chart is dated July 15, 2008 [Doc. 174 at Ex. I], and shows a

slightly different hierarchy.   Plaintiff is identified as the "Supervisor" for Admin/Comm. and

oversees Administration, Commercial and Container Maintenance.  "Supervisor Steve Madrid"

oversees Support/Residential.

The third organizational chart is undated [Doc. 174 at Ex. J].  It shows Plaintiff as the

"Interim Manager" directly overseeing  Administration , TACC , and "Operations Supervisor

Jose Castillo" indirectly overseeing the Commercial,  Residential, and Station Foreman.

The fourth organizational chart  dated June 14, 2011 [Doc. 174 at Ex. K] shows Plaintiff

as the "Assistant Manager" and indicated she directly oversees Administration, TACC and the

"Operations Supervisor" and indirectly oversees Commercial, Residential, Station Foreman and

Mechanic Foreman.

E.  Plaintiff's employment status at NCSWA.

Defendants argue that, pursuant to the PPP, Plaintiff held an "at will" position as a "Division Supervisor" as that term is used in Section 1.2 and Section 3.2 of the PPP which address the chain of command and the classification of employees. [*See* UMF, above.] Plaintiff argues that on the organizational charts referred to in Section 1.2 of the PPP she is referred to as "Administrator", "Supervisor,"  "Interim Manager," and as "Assistant Manager," and that those designations fail to clearly identify her as a "Division Supervisor" or "Manager" as required for "at will" employment under Section 3.2 of the PPP. [Doc. 189 at pp. 12-14.]

It is undisputed that Division Supervisors are considered to be "non-classified" or "at will" employees who serve at the pleasure of the Board. [UMF 4 and 5.]  Plaintiff agrees that the term "Division Supervisors" is defined in Section 1.2 of the PPP to include "those persons designated on the staffing chart as heading the Field Operations and Office Departments." [UMF 6.] (Emphasis added).  She also agrees that, pursuant to the Section 7.8 of the PPP those employees who are "non-classified" or "at will," including the Division Supervisors, are not entitled to invoke the grievance procedures set forth in the handbook. [UMF 7]

Plaintiff appears to base her argument that she is a "classified" employee on Section 3.2 of the PPP which  provides that "Division Supervisors and Managers" serve by appointment. Because the organizational charts do not designate her specifically as a "Division Supervisor" or "Manager," she is therefore a "classified" employee under the PPP which creates an implied contract of employment and therefore she can only be discharged for cause.

In support of her argument that she is a "classified" employee,  Plaintiff also relies on Section 1.2 of the PPP which provides that the various divisions within NCSWA are organized "according to function" and that these "Divisions are supervised by the Manager and directed by

26

the Division Supervisors."   [Doc. 174 at Ex. E.] The Division Supervisors are persons

"designated on the staffing organizational chart as heading the Field Operations and the Office

Departments." [*Id.*] Plaintiff argues that she was never designated as heading an "Office

Department" on the organizational charts.  She asserts that because  "Office Department" is

capitalized in Section 1.2 of the PPP, NCSWA means that "Office Department" is a department,

and seems to argue that therefore there should be an actual box on the organizational charts that

is titled "Office Department."  Because there is not a box so named, Plaintiff claims she is

therefore a "classified employee" and can only be discharged for cause. [Doc. 189 at pp.12-14.]

It is true that there is no box on the organizational charts titled  "Office Department";

however, there is not a box entitled "Field Operations" either.  The PPP state that NCSWA "is

organized into various divisions according to function." [Doc. 174 at Ex. E, Section 1.2.]  A

review of the organizational charts reflect NCSWA has a department wherein  NCSWA

segregated "office" or "administrative" work from the various field operations, including support

services, commercial and residential. [*Compare* Doc. 174 at Ex. H, I, J and K.]

The Court finds that Plaintiff's argument that she has a implied contract of employment

based on nomenclature differences contained in the PPP with regard to "Division Supervisors,"

as well as her argument that there is a distinction between "Office Department" and

"Administration" is nonavailing.  Plaintiff's interpretation of the PPP is strained and falls short

of rising to the level of "objectively reasonable."  *West v. Wash.Tru Solutions,*2010-NMCA-001,

¶ 7.

 The difference in the names of titles used in the PPP with the titles used on the

organizational charts constitute a distinction without a difference.  As noted by Defendants,

"Plaintiff's proposed interpretation leads to the absurd result that Section 1.2 and the reference to

'Division Supervisors' [as well as "Manager"] in Section 3.2(A) are rendered completely meaningless."  The Court is not required to give credence to an interpretation that "would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument" and "the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency."  *USA Life One Ins. Co. Of Ind. v. Nuckolls,* 682 N.E.2d 534, 539 (Ind. 1997)(quoted authority omitted); *see also Pub. Serv. Co. Of N.M, v. Diamond D Constr. Co.,* 2001-NMCA-082, ¶ 19 ("We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document...")

In every organizational chart, whether Plaintiff was identified as  "Administrator," "Supervisor,"  "Interim Manager," or "Assistant Manger," Plaintiff is identified as the person responsible for supervising *at a minimum* the employees in the box designated "Administration," which clearly indicated a department devoted to office work, human resource work, and management functions.  Furthermore, Plaintiff's own admissions and testimony reflect that she considered herself a "supervisor" of a "department."  The undisputed evidence shows that from 2004 through 2009, while Plaintiff was the "Administrator" and then "Assistant Manager/ Administrator" for NCSWA , she was responsible for supervising the office staff and as the supervisor of the office staff, she had the authority to control the office employees' activities and assign them tasks. [UMF 10.]  She referred to herself as "supervisor" [UMF 11] and clearly argued that she had authority to reprimand, discuss, review or inquire about an employee's job performance, behavior, time or work. [*Id.*] She made it clear that she was in charge of the office at NCSWA and wrote "I have made it very clear to all employees that I do not tolerate disrespectful or rude behavior in the Authority Office." [*Id.*]   Moreover, in her current resume which she produced to Defendants in the course of this litigation, she states that she was hired as

28

"Administrator for NCSWA"  and her responsibilities included creating a customer data base, a

billing structure data base, a billing system, recruiting "office staff to assist in daily office

operations," "supervised staff of 25+, both in field and office staff," created human resource

procedures, office procedures, payroll and more. [Doc. 174 at Ex. L.]

In New Mexico, "[a]n implied contract is created only where an employer creates a

reasonable expectation" of continued employment. *Hartbarger*, 115 N.M. at 783, 857 P.2d at

673.  "The reasonableness of expectations is measured by just how definite, specific, or explicit

has been the representation or conduct relied upon." *Id.* "[I]t is not any single act, phrase or

expression, but the <u>totality</u> of all of these, <u>given the circumstances and the parties' situation and</u>

<u>objectives</u>, which will control." *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 766 P.2d 280, 286

(1988)(emphasis added.)

Plaintiff's labored interpretation of the PPP, and the organizational charts,  in her effort

to create a reasonable expectation of continued employment for herself is not "definite" or

"specific" or "explicit."  In fact, Plaintiff's interpretation of the PPP and the organizational

charts is objectively unreasonable.  It is not reasonable that the Plaintiff, who, while employed at

NCSWA performed duties as the manager of the office staff and also repeatedly referred to

herself as a supervisor, now seeks to remove herself from that position in order to gain "at-will"

status.  In addition, the Plaintiff's employment application, directly contrary to her argument in

her Response,  actually bolsters her at-will status.  Her unambiguous acknowledgment in the

application that her employment may be terminated for any reason, as well as her

acknowledgment that no management official is authorized to make any oral assurance or

promise of continued employment, could not be clearer.[5]  The fact that other "classified" employees filled out the same application is not relevant.

The Supreme Court has made clear that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Rhoads v. Miller,* 352 Fed. Appx. 289, 291 (10th Cir. 2009)(unpublished)(holding that, on summary judgment, plaintiff's version of the facts will be adopted "unless that version is so utterly discredited by the record that no reasonable jury could have believed him"(quotation marks and quoted authority omitted)).  Here, no reasonable jury could find Plaintiff's interpretation of the PPP reasonable nor sufficient to overcome the presumption of at-will employment as well as her own acknowledgment of being an at-will employee.

The Court finds that Plaintiff did not have an objectively reasonable expectation of continued employment based on the PPP.  Plaintiff, therefore, does  not have a property interest in continued employment and her constitutional right to due process is not implicated.  Consequently, Plaintiff cannot establish a violation of her constitutional right to due process. *See Alexander v. Pushmataha Cnty./Town of Antlers Hosp. Auth.,* 63 Fed. Appx. 429, 432 (10th

---

[5] This type of disclaimer is "enforceable and clearly was intended to protect the employer from claims based upon oral representations made to employees concerning their employment status."  *Chavez v. Manville Products Corp.*, 108 N.M. 643, 646, 777 P.2d 371, 374 (1989).

In addition, the Court notes without deciding, that Mr. Lewandowki's oral representations may not be dispositive of Plaintiff's claims on other grounds.  Pursuant to NMSA 1978, Section 37-1-23(A)(1976), "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  Also, the New Mexico Supreme Court has held that evidence of oral representations are not admissible to vary the terms of a written contract.  *Trujillo v. Gonzales*, 106 N.M. 620, 747 P.2d 915 (1987).

Cir. 2003)(unpublished)("Without a property interest in continued employment, the constitutional safeguards of procedural due process do not apply.")

      F.    <u>Plaintiff's Breach of Contract Claim based on wrongful discharge, failure to receive a hearing, and failure to be allowed to inspect her personnel files.</u>

To the extent that Plaintiff's breach contract claim is based on a wrongful discharge claim and a failure to receive a hearing, it fails for the same reason her Section 1983 procedural due process claim fails; Plaintiff was an at-will employee. *See discussion above.*

Plaintiff also alleges that her breach of contract claim is based on failure to be allowed to inspect her personnel files. [Doc. 150 at p.8, ¶ 44.] Defendants argue in their Motion for Summary Judgment [Doc. 174 at pp. 23-24] that the PPP section regarding the right of each NCSWA employee to inspect his file is a general policy statement and non-promissory in nature and therefore, under New Mexico law, it does not rise to the level of an implied contract. Plaintiff did not address this argument in her Response [Doc. 189].

The PPP state at Section 4.13(A) as follows: "Each Authority employee may examine his own permanent personnel record at any reasonable time during established office hours in the Manager's office." New Mexico appellate courts have long upheld the dismissal of an implied contract claims where the handbook language relied up is "of a non-promissory nature and merely a declaration of defendants general approach to the subject matter discussed." *Sanchez v. The New Mexican,* 106 N.M. 76, 78, 738 P.2nd 1321, 1324 (1987). The Court finds that the language in this instance is insufficient to form the basis for a suit for breach of contract. *See, e.g.*, *Stieber v. Journal Publishing Co.*, 120 N.M. 270, 273-74, 901 P.2d 201, 204-05 (Ct. App. 1995); *Gerald v. Locksley*, 785 F.Supp.2d 1074, 1142 (D.N.M. 2011)(Browning, J.).

## CONCLUSION

1.  Defendant's Motion for Summary Judgment [Doc. 174] is GRANTED.  Plaintiff's Violation of Due Process Claim [Doc. 150 at p. 9-10 at ¶¶ 49-54] is dismissed with prejudice as to all Defendants.  Plaintiff's Breach of Contract Claim [Doc. 150 at pp. 8-9] based on the failure to allow Plaintiff to inspect personnel file [*Id.* at p. 8 at ¶ 44 (c)], firing Plaintiff without cause [*Id.* at p. 8 at ¶ 44 (d)], and failing to provide Plaintiff with a hearing  [*Id.* at p. 9 at  ¶ 44(e)] is dismissed with prejudice as to all Defendants.

2.   Defendant Gino Romero's Motion for Partial Summary Judgment Based on Qualified Immunity is denied as moot.

3.  Plaintiff's Motion for Summary Judgment is denied as moot.

4.  Plaintiff's claims that NCSWA breached an alleged contractual and statutory obligation to pay out her accrued vacation and sick leave [Doc. 150 at p. 8 at ¶¶ 44 (a) and (b) and at p. 10 at ¶¶ 55-56) are the only remaining claims.  The Court declines to exercise supplemental jurisdiction as to these claims pursuant to 28 U.S.C. § 1367(a) and they are dismissed without prejudice.

**IT IS SO ORDERED**.

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**